IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OWEN KEITH HENDRICKS & THOMAS SALTER, *Plaintiffs* | § § § § | |
| v. | § § | CIVIL ACTION NO.: 4:19-cv-4749 |
| CHENIERE ENERGY., *Defendant* | § § § § § | JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

Plaintiffs Owen Keith Hendricks and Thomas Salter ("Plaintiffs" or "Mr. Hendricks" or "Mr. Salter") file their Original Complaint, complaining of and about Defendant Cheniere Energy (hereinafter referred to as "Cheniere" or "Defendant"), and in support, show to the Court the following:

## I.
## PARTIES

1. Plaintiffs Owen Keith Hendricks and Thomas Salter are individuals residing in Texas.

2. Defendant is a for-profit corporation organized and existing under the laws of the State of Texas. It is authorized to conduct business in the State of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218 USA.

## II.
## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. section 1331, as Plaintiffs' causes of action arise under a federal statute: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a).

4. Additionally, pursuant to 28 U.S.C. Section 1367, this Court has supplemental jurisdiction over Plaintiffs' claims arising under Texas law because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

5. Venue is proper in the U.S. Southern District of Texas–Houston Division pursuant to 28 U.S.C. Section 1391(a), because this is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred.

## III.
## NATURE OF THE ACTION

6. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended. Plaintiffs allege that they were discriminated against on the basis of sex, age, and retaliated against for pursuing an activity protected by Title VII.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On January 8, 2019, Plaintiff, Mr. Salter, filed a Charge of Discrimination (Charge No. 460-2019-01558) with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division against Defendant alleging sex and age discrimination and retaliation.

8.     On January 8, 2019, Plaintiff, Mr. Hendricks, filed a Charge of Discrimination (Charge No. 460-2019-01566) with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division against Defendant alleging sex and age discrimination and retaliation.

9.     Subsequently, on September 9, 2019, the EEOC issued Plaintiffs their Notice of Right to Sue. Plaintiffs file this lawsuit within ninety (90) days of receiving the Notice from the EEOC. Therefore, Plaintiffs' lawsuit is timely filed. A copy of the Right to Sue notice is attached hereto as Exhibit A.

## V.
## FACTS

10.    Plaintiff Thomas Salter, 41 years old, began his employment with Defendant in July 2015 as Superintendent. Plaintiff Owen Keith Hendricks, 54 years old, began his employment at Cheniere in March of 2012 as Director of Construction. Both Salter and Hendricks were assigned to the Corpus Christi Liquefaction Project in Gregory, Texas.

11.    In November 10, 2017, Salter and Hendricks were invited by supervisor and Vice President of Projects, James McMillan, to a team building/ hunting trip in Beaver Creek, Texas. To Plaintiffs' knowledge, participation on this trip was sanctioned by Cheniere's upper management. Thus, Plaintiffs participated in the trip on December 28, 2017. Plaintiffs drove to the location and paid for all expenses except for the hunted animal fee.

12.    On July 6, 2018, Plaintiff Salter performed maintenance on a 2016 Honda Pioneer UTV assigned to his Project. The Honda was being sabotaged where it was parked on site via water placed in the fuel tank. Plaintiff Hendricks contacted Senior Vice President Ed Lehotsky to inform him of the equipment being sabotaged. Lehotsky authorized the installation of a hidden camera to catch the saboteur. Lehotsky also agreed to remove the unit from site to run fuel

treatment through the system and perform repairs. As Plaintiff Salter's first-line supervisor, Plaintiff Hendricks instructed Salter to perform this task while waiting for the installation of the hidden camera.

13. In the months preceding the Plaintiffs' termination, Plaintiff Hendricks was receiving constant verbal attacks from Office Manager Elizabeth Ruiz in front of his coworkers and subordinates. He talked to Keith Little and Human Resources Manager Nancy Bui about the verbal abuse to no avail.

14. On August 28, 2018, Ruiz was in Hendricks' office screaming at him. Her screaming was so loud that many of Hendricks' coworkers and subordinates could hear what she was saying. Plaintiff Salter, who was approximately 70 feet away from Hendricks' office, heard Ruiz make the following statement: "I don't know if Thomas Salter is sucking your dick or if you are sucking Thomas Salter's dick." After the incident, both Hendricks and Salter made formal sexual harassment complaints to Nancy Bui about Elizabeth Ruiz's comments and behavior towards them. Plaintiff Hendricks—on behalf of both he and Plaintiff Salter—complained about Ms. Ruiz's behavior to Jose Dumlao, Senior Director of Project Management, and to Mr. Lehotsky.

15. After receiving the Plaintiffs' complaints, Ms. Bui spoke to Plaintiff Salter regarding the details of his complaint. Bui told Salter that Ms. Ruiz was "protected under company policy." Plaintiff Salter attempted to follow-up with Ms. Bui on two occasions on the results of the investigation of his complaint and never received a response.

16. Bui also spoke to Plaintiff Hendricks about his complaint. Hendricks was also informed that Ms. Ruiz was protected under company policy even though she had admitted to making these statements. During this meeting, Mr. Lehotsky told Ms. Bui "We will never satisfy this woman" in reference to Ms. Ruiz's complaints and the fact that she wanted to take legal action

against Cheniere. Hendricks also attempted to follow-up with Ms. Bui on the results of the investigation of his complaint. Like with Salter, Hendricks never received a response.

17. After Plaintiffs made the sexual harassment complaints, Ms. Bui proceeded to discuss with them the team building/hunting trip taken in 2017 and the use of the Honda UTV off site in July 2018. Plaintiffs explained to Ms. Bui that they attended the team building/hunting trip after invitation from Mr. McMillan. Plaintiffs explained to Ms. Bui that Jon Gaskamp, Construction Manager, and Sheila Findley were also in attendance. Plaintiffs advised Ms. Bui that they were invited via the project VP and verified the approval to attend with their supervisors, including Mr. Gaskamp. Lastly, Plaintiffs explained to Ms. Bui that they had authorization from Mr. Lehotsky to take the UTV off site.

18. Plaintiffs went to Mr. Lehotsky's office with and clarified the use of the Honda UTV and their participation in the team building/hunting trip. Mr. Lehotsky told Plaintiffs that he did not foresee any disciplinary action against the parties involved in the trip because permission from a VP was given. Mr. Lehotsky also stated that senior management had been on more hunting and fishing trips than he could count, most much larger than the one Plaintiffs participated in. Additionally, Mr. Lehotsky stated that the use of the Honda UTV was deemed authorized, that the inquiry was closed, and it would not be included in Plaintiffs' respective personnel files. Mr. Lehotsky further advised Plaintiffs that next time the unit was taken off site to coordinate with company insurance to make sure it is covered while off site.

19. Plaintiffs spoke to Ms. Bui shortly after their conversation with Mr. Lehotsky, and she reiterated that no disciplinary action would be pursued against them regarding any of the incidents, due to them having permission from various Managers/VP's. Ms. Bui also advised the matter was closed.

20.    On August 29, 2018, around midnight, Salter and Hendricks both received an email from Deanna Newcomb, Ethics Manager. Ms. Newcomb advised she wanted to speak with Plaintiffs privately the next day at the O&M offices. Ms. Newcomb also advised Plaintiffs not to tell anyone she wanted to meet with him.

21.    Plaintiffs each met with Ms. Newcomb on August 30, 2018. Ms. Newcomb asked Plaintiffs various questions regarding the team building/hunting trip and the ATV Honda matter. Halfway through each interview, Erin O'Driscoll, Employment Law Advisor, walked in and started taking notes. The two tried to get Plaintiffs to admit that other employees were using contractors for personal use, accepting kickbacks, etc. Plaintiffs advised them that they had never seen anyone doing the things they were being asked about. Newcomb and Driscoll seemed disappointed. Ms. Newcomb advised that she could possibly need to speak with Plaintiffs again.

22.    Around September 7, 2018, Plaintiffs received a meeting request from Ms. Newcomb to meet on September 10. During this follow-up meeting Ms. Newcomb again discussed the team building/hunting trip and asked various questions about other attendees. Erin O'Driscoll was present for the entire meeting this time. Plaintiffs were asked again if anyone else participated in anything of an unethical nature. Plaintiffs advised them they were not aware of any unethical behavior and the meeting concluded.

<u>SALTER'S TERMINATION</u>

23.    On Friday, September 28, 2018, Salter was out on sick leave and received a phone call from Mr. Gaskamp, asking him to come in for an important meeting. Salter advised Mr. Gaskamp that his son was out of school sick, but Mr. Gaskamp stated that it was very important.

24.    When Salter arrived at the office, he was greeted by Mike Wood from HR. Mr. Wood asked Salter if he had downloaded any proprietary company information lately. Salter

responded that he had only downloaded normal working information. An unknown man joined the conversation and asked Salter if he had any thumb drives. Salter thought that was strange, as everyone on site works with external drives. The unknown man asked Salter where his were and he took them to his office where they confiscated all his thumb drives. Salter asked Mr. Wood what this was all about, and he advised Salter that IT had been watching his computer and determined that he had been transferring large amounts of data. Salter told Mr. Wood that he transferred very large data files all the time as part of his job duties. The files were hydrographic survey files and aerial HD drone pics.

25. Mr. Wood then told Salter that they were done, and that Mr. Ed Lehotsky wanted to see him in his office. Salter entered Lehotsky's office and Mr. Lehotsky, Mr. Dumlao and Ms. Bui were waiting for him. Ms. Bui closed the door and handed Salter what she said was a written reprimand for an ethics violation for his participation in the hunting trip. Salter advised her that they had already talked about this and he had provided proof that he was invited and had permission, respectively. Ms. Bui then stated that the managers that approved the trip did not have permission to give approval. Salter responded that it wasn't right, but Ms. Bui told him that even if he disagreed with the reprimand, he had to sign it stating he had received it and that this was not a terminatable offense.

26. Ms. Bui immediately handed Salter a termination letter as a result of him taking the Honda UTV off site. Salter explained once again that they had already discussed this incident. Ms. Bui responded that again managers did not have authority to authorize him to take the vehicle off site. Plaintiff looked at Mr. Lehotsky, who was advised by Mr. Hendricks before the Honda UTV was taken off site, and he said, "Sorry Tom, the company has new management and is moving in a different direction". Ms. Bui compelled Salter to sign his termination letter.

*Plaintiffs' Original Complaint* 7

27. When Ms. Bui left the room, Salter asked Mr. Lehotsky why he didn't advise upper management that he was aware of both incidents. Mr. Lehotsky responded that he was sorry, and they were forcing to do this on his last day of work prior to his retirement. When Ms. Bui came back to the room, Salter asked her if his termination was in any way related to his sexual harassment complaint against Ms. Ruiz. Ms. Bui refused to respond Salter's question. Mr. Hendricks, who had also filed a sexual harassment claim against Ms. Ruiz was also terminated on this date.

### HENDRICKS' TERMINATION

28. On the same day that Salter received a phone call from Mr. Gaskamp, Hendricks also received a phone call from him. As with Plaintiff Salter, Mr. Gaskamp asked Plaintiff Hendricks to come in for an important meeting. When Hendricks arrived at Mr. Lehotsky's office, Mr. Lehotsky, Mr. Dumlao and Ms. Bui were waiting for him. Ms. Bui closed the door and handed Hendricks what she said was a written reprimand for an ethics violation for his participation in the hunting trip. Hendricks advised her that they had already talked about this and he had provided proof that he was invited and had permission. Ms. Bui then stated that the managers that approved the trip did not have permission to give approval. Ms. Bui compelled Hendricks to sign the reprimand and informed him that it was not a terminatable offense.

29. Ms. Bui then handed Plaintiff Hendricks a termination letter as a result of him authorizing Plaintiff Salter to take the Honda UTV off site. Hendricks again explained that they had already discussed this incident. Ms. Bui responded that managers did not have authority to authorize him to take the vehicle off site. Plaintiff looked at Mr. Lehotsky—the manager who authorized Plaintiff Salter to take the Honda UTV off site. Mr. Lehotsky said, "Sorry, I tried but

there is nothing that I can do." Ms. Bui compelled Hendricks to sign his termination letter and was escorted off site by security.

30. Plaintiff Salter and Plaintiff Hendricks—both of whom had filed sexual harassment complaints against Ms. Ruiz— were terminated on the same day. Plaintiff Salter and Plaintiff Hendricks were also the only employees disciplined for the Honda UTV matter even though multiple Cheniere employees knew of the Honda situation and participated in the team building events it was used in.

## VI. CAUSES OF ACTION

### 1. Sex Discrimination Pursuant to Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e-2(a)

31. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

32. Plaintiffs are male, which, in the situation described above and for the purposes of Title VII, make them a member of a protected class.

33. Plaintiffs were clearly qualified for their position at Cheniere, which the absence of any disciplinary or similar record will show.

34. Plaintiffs were terminated by Defendant without cause, which is an ultimate form of an adverse employment action an employee could face.

35. No action was ever taken against Ms. Ruiz by Defendant to remedy or stop Ms. Ruiz's harassing behavior towards Plaintiffs.

36. As such, Defendant discriminated against Plaintiffs on the basis of sex by taking an adverse employment action against them, which action was never taken against similarly situated non-members of Plaintiff's protected class.

## 2. Retaliation Pursuant to Title VII of the

## Civil Rights Act of 1964, as Amended, 42 U.S.C. § 2000e-3(a)

37. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

38. Plaintiffs made complaints about being sexually harassed in their workplace through the channels that were made available to them by Defendant.

39. In response, instead of stopping the barrage of repetitive and persistent inappropriate comments directed at Plaintiffs by their supervisor, responded by terminating Plaintiffs.

40. As such, Cheniere retaliated against Plaintiffs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), as amended, by terminating Plaintiffs for Plaintiffs' engagement in an activity protected by Title VII.

## 3. TCHRA Retaliation

41. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

42. Defendant intentionally retaliated against Plaintiffs by terminating them after they complained of discrimination at the hands of Defendant's HR, contrary to the provisions of Section § 21.055 of the Texas Labor Code.

## 4: TITLE VII AGE DISCRIMINATION

43. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

44. Defendant intentionally engaged in unlawful employment practices involving Plaintiffs' because of their age.

45. Defendant discriminated against Plaintiffs in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated or classified Plaintiffs in a manner that would deprive or tend to deprive them of any employment opportunity or adversely affect their status because of Plaintiffs' age, fifty-seven (57) years old and forty-one (41) years old, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

### 5: THCRA AGE DISCRIMINATION

46. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

47. Defendant intentionally engaged in unlawful employment practices involving Plaintiffs' because of their age.

48. Chapter 21 of the Texas Labor Code protect persons forty years of age and older against discriminatory employment practices based on age.

49. Defendant discriminated against Plaintiffs in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiffs in a manner that would deprive or tend to deprive Plaintiffs of any employment opportunity or adversely affect Plaintiffs' status because of Plaintiffs' age, fifty-seven (57) years old and forty-one (41) years old, in violation of the Texas Labor Code § 21.051 et seq.

### 6: ADEA RETALIATION

50. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

51. Defendant intentionally retaliated against Plaintiffs because of the complaints made to Defendant of age discrimination in violation of the ADEA.

### VII.
### JURY DEMAND

52. Plaintiffs demand a jury on all issues to be tried in this matter. Plaintiffs submit the jury demand and herein submits the jury fee.

## VIII.
## ATTORNEY'S FEES

53. Plaintiffs seek reasonable and necessary attorney's fees for sex discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k).

## PRAYER

For these reasons, Plaintiffs pray that Defendant Cheniere be cited to appear and answer herein, and that on final trial, Plaintiffs have judgment against Defendant for the following:

   a. All damages to which Plaintiffs may be entitled pursuant to this Original Complaint, or any amendments thereto, including but not limited to back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

   b. Compensatory damages, including, but not limited to, emotional distress;

   c. Past, present, and future physical pain and mental suffering;

   d. Punitive damages;

   e. Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

   f. Pre-judgment interest at the highest rate permitted by law;

   g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

   h. Costs of court; and

   i. Any other relief to which Plaintiffs may be entitled at law or in equity, which the Court may deem fair and just to award to Plaintiffs.

Respectfully submitted,



_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
Southern District I.D. 713316
2603 Augusta Dr., Suite 1450
Houston, Texas 77057
Main: (713) 742-0900
Fax: (713) 742-0951
alfonso.kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**CO-COUNSEL FOR PLAINTIFFS:**



Kevin T. Kennedy
Texas Bar No. 24009053
Southern District No. 305324
2603 Augusta Dr., Suite 1450
Houston, Texas  77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
kevin.kennedy@kennardlaw.com